Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Judge Hawkins and I are delighted to welcome our colleague, Chief Judge Barbara Lynn from the Northern District of Texas, who is sitting with us today by designation. We're grateful for her help. And we'll begin. We have six cases on the docket today for argument. And the first one is Cruz v. Betancourt. And I think we have some law students here, right? So we welcome you and your supervisor. So please proceed. Good morning. Good morning, Your Honors. May it please the Court, my name is Allison Watson, and I'm Allison Watson. I, along with my co-counsel, Hannah Moravec, represent the appellant, Santiago Cruz, in this case. At this time, we would like to reserve two minutes for rebuttal. Okay. Now, you've not done this before, I suspect, so the clock ticks down. So just watch. I'll try to help you, but watch that, okay? Thank you. My co-counsel will be addressing the retaliation issues today, and I will limit my discussion to why the District Court erred in finding Mr. Cruz failed to exhaust his Under this Court's precedent in Reyes v. Smith, if prison officials had notice of the Eighth Amendment claim, an opportunity to resolve it, and heard it through all three levels of administrative review, then Mr. Cruz exhausted his remedies by way of that procedural waiver. Here, prison officials did have notice of his Eighth Amendment claim, even if we only look to his originally filed 602 form. In that form, Mr. Cruz stated in his request for relief, I request that C.O. Benacourt and C.O. Creo, quote, stop telling others to beat me up. He also said, in that same 602 form, that he was raising an Eighth Amendment claim, and he further stated, requested, that prison officials investigate the incident on May 5th, 2014. All of this information taken together shows that Mr. Cruz was raising an Eighth Amendment claim, that Officer Benacourt was orchestrating fights between Mr. Cruz and other inmates. And even only on the face of the 602 form, prison officials could have had notice of this claim. Because the district court didn't agree with you, what did the district court do specifically that was wrong? Specifically, the district court, there were two reasons they decided that Mr. Cruz failed to exhaust his claim. One was that they decided that it was untimely filed. However, prison officials waived the untimely filed, waived the procedural defect of the untimely filedness, and under this court's precedent in Rays v. Smith, although it was not squarely on the issue of being untimely filed, the same logic applies here. In what way was there a waiver? What are you referring to? So when prison officials had notice of the fact that Mr. Cruz was filing a claim regarding an incident on May 5, 2014, in September, they could have at that point followed the non-conforming grievance procedures of California regulations and canceled his appeal stating that it was untimely filed. However, they chose to not do this and instead continued to hear the grievance through all three levels of administrative review. And in that way, they waived any procedural defects that might have been present in his originally filed 602 form from either being untimely filed or not containing all the facts that Cruz knew as required by California regulation. I've read the form that your client filled out that you're describing right now, and it seems to refer to an August 18, 2014 incident, not May 5. Am I wrong? You're not wrong. No, it does refer to both a May 18 and a May 5 incident. He describes both. August 18th. Yes. I'm sorry. August 18th and a May 5 incident. But both are separate claims here. Although he doesn't specifically state his investigate the May 5 incident claim is tied to a fight, even if prison officials in investigating that incident just looked at the law, the incident logs for that date, which are the date of the RSEC or RSER 31 to 32, they would have seen that there was a fight between Cruz and another inmate on that date and could have surmised from the other information provided by his 602 that this fight could have been orchestrated by Officer Benacort. If the form he filled out indeed does refer to the August 18, 2014 incident, was that raised in district court? Mr. Cruz did discuss the August cell search, if that is what you're referring to. The August 18, 2014 incident, was that raised in district court? I couldn't find it. As a separately about the fight on August 18th? No, he did not raise that at the district court. He only was alleging... We can't consider it here. I don't believe so, no. And we did not raise that claim in our appeal, the fight on August 18. However, the May 5 fight was raised and they originally filed 602. That is the claim that Mr. Cruz brought in the district court and that he was seeking relief on for his injuries from that, the four broken ribs there. That's why this is always a hard thing when you have two lawyers trying to argue this. You're going to share your time with her? I am. And I see that my time is running low, so if there's no further questions on exhaustion, I'd like to cede the rest of my time to my co-counsel. Please do. Thank you. May it please the Court, Hannah Morabec addressing the retaliation issue on behalf of the appellant, Mr. Cruz. Turning first to the because of prong of Mr. Cruz's retaliation claim, Mr. Cruz did bring forth sufficient evidence at the district court to raise a genuine issue of material fact as to whether Officer Betancourt retaliated against Mr. Cruz because of grievances filed against Officer Carrillo, and raised genuine issues of fact as to whether Officer Betancourt knew about those grievances. Let me ask you this, Counselor. As you know, a retaliation claim has five elements, one of which is, in this case, that Betancourt knew of the complaint against Carrillo. Where in the record is it evident that Betancourt had that knowledge? There's no direct evidence that Officer Betancourt was aware of the grievances, but Cruz did present circumstantial evidence that he may have known. He alleged that Officer Betancourt No, but with respect, if there are five elements to the retaliation claim, and there's no direct evidence that he knew, doesn't the claim fail? I don't believe so, Your Honor. Case law doesn't suggest there needs to be direct evidence of any one of the prongs in particular, and the case law is fairly strong that circumstantial evidence can support the because of element of the claim. That's clear from McCollum and several other cases. And there was circumstantial evidence showing that the two were floor partners, which in a prison scenario, and particularly in this prison in McKinley Hall from the logs at RCR 31, show that there were two officers working in pairs at any given time in the prison, meaning these officers would have been dependent on one another for their safety, which would have presumably developed a close bond between the two, leading to a potential inference by a finder of fact that Carrillo would have shared something like this grievance with Betancourt, especially considering that that grievance would have triggered an investigation into her behavior. Doesn't that seem kind of sketchy, though? I mean, I realize that you can make it, you know, an implication, but that's all conjecture, pardon conjecture, based upon the circumstances in which they worked. But there's no, I didn't see anything in the record that indicates any information showing that Betancourt knew about the complaint against Carrillo. He did not state that he knew about the grievances or that he was retaliating because of the grievances, but his behavior, considering that he performed the search against Cruz shortly after the grievance was filed, coupled with the fact that he used the search to orchestrate a fight in which Cruz broke four of his ribs, in addition to Carrillo's statements to Cruz while other searches were happening. The search, though, was for a legitimate purpose, wasn't it? Potentially legitimate insofar as it was used to seize a TV and those other items, but not legitimate insofar as it was used to- He's not allowed to have electronic equipment in his cell, correct? That is correct, Your Honor. And he had electronic material in his cell? That is correct. And there was a search and it found it? Yes, Your Honor. Doesn't that sort of take the search off the table? No, because under Bruce v. Elst, a general justification can't justify a policy if that policy was used in retaliation. And here it was used not only to seize the electronic devices, but also to set up a fight between Cruz and another inmate, as Cruz alleged. And we would like to reserve a little bit of time for- Please do. Save the balance of your time if you like. Okay. Thank you. All right, well, we'll hear from the State. Good morning, and may it please the Court. Good morning. Jenia Parkman for Defendant Appley Correctional Officer Betancourt. In this case, Mr. Cruz filed a grievance about cell searches in a fight with a cellmate on August 18, 2014, and ended with a lawsuit about one of those searches in a different fight with a different inmate on a different date. The District Court correctly entered summary judgment of that new claim because Mr. Cruz failed to exhaust it. Comparing Mr. Cruz's September 17th grievance with his current claim shows that the grievance was not sufficient under Griffin v. Arpaio to put the prison on notice of his current allegation. In the grievance, Mr. Cruz complained that Officer Carrillo was telling Officer Betancourt what to do to him, and that was cell searches. He mentioned two recent cell searches when Officer Betancourt confiscated some minor appliances, some hot pots, a hair trimmer, and other items. He then got to his main complaint. The cell search on May 5, 2014, when Officer Betancourt confiscated a major appliance, his television, by far the biggest confiscation from the three searches he identified. He explained he had paperwork for that television and that Officer Betancourt was wrong to take it away. He then asked the prison to investigate the incident of May 5, 2014. That statement could only refer to the confiscated television because there is nothing else that Mr. Cruz alleged happened on that day. In the grievance, he also complained that his cellmate, Mr. Davis, beat him up on August 18, and he asked that Officers Carrillo and Betancourt stop telling others to beat him up and that they stop telling others, correctional officers, bad things about him that aren't true. Because he did not identify a fight on May 5 or any time before August 18 and did not name inmate Osborne, that statement was not sufficient to put the prison on notice of his current allegation. The court's analysis should end there because the prison's investigatory interview is not part of Mr. Cruz's grievance. But even if the court considers the interview, it's still not sufficient to put the prison on notice of his current allegation. So bottom line, and I think my colleague was touching on this, is the there are two different events, two different dates, May 5th and August the 18th. The initial claim was for August 18th, which involved one set of facts, but what was talked about in the district court was the May 5th event, which involved a separate set of facts. Therefore, there was no exhaustion and the retaliation complaint fails from your perspective. Is that right? Well, I'm talking about the Eighth Amendment claim that, yes, that claim fails because he did not put the prison on notice of a fight on May 5, only the confiscated television. What about the retaliation issue? I discussed with counsel here about the elements, the five elements for retaliation claim. What's your response to my question to her? The question is, if there's no evidence that Officer Bennett Cork knew about the grievance. Direct, yeah, direct evidence. She suggests that circumstantial evidence, just by the way the prison operates, is sufficient to put people on notice. What's the government's response to that? Well, first, the case cited is McClellan versus CDCR. And in that specific case, the retaliation claim was brought not by an inmate, but by an employee. But even if circumstantial evidence is sufficient, it has to be the kind of evidence that a juror can make the inference that an officer acted in retaliation for some kind of protective conduct. And there is no available inference here. Here, Mr. Cruz went on property restriction on April 15th. The two officers worked together, didn't they? Yes, Your Honor. In the same location? Yes, Your Honor. And they were in constant contact? Yes, Your Honor. And were required to know the details of the inmates that were housed in their area, right? Yes, Your Honor. Why isn't that enough? Well, to say that Mr. Bennett Cork learned from Officer Crio that an inmate filed grievance against her for being disrespectful, as Judge Schmidt said, that requires another inference about what she would have said to him about that kind of issue. It's not the kind of issue necessary for custodial care. I would think that two officers who worked together in a custodial situation would want to share information. It would help them perform their professional duties, right? It's possible, Your Honor. But in this case, there's no evidence that Officer Crio told Officer Bennett Cork. And that's why that claim fails. But there's also the other issue is that Mr. Cruz went on property restriction on April 15th. Two days later, he filed for grievance against Officer Crio. Then the search happened on May 5th. There's no inference that that search was in retaliation for the grievance rather than to enforce the recently imposed property restriction that went in effect almost the same time, a little bit before the grievance. So there's just no inference there that it was retaliatory. Would there be a claim if we assumed knowledge, even though there was a legitimate penological reason for the search? Not according to the case law, Your Honor. Legitimate penological interest is a separate element. So the inmate must prove that there was no legitimate penological interest to state a claim. So if the motivation was retaliation, but there was a legitimate penological interest, would there be a claim or not? There would not be a claim under the First Amendment. There may be other reasons to discipline the inmate. I'm sorry, discipline the officer or bring some other kind of state law claim if it applies. But the case law requires that the inmate prove there is no legitimate penological interest in the case. The Bruce case is distinguishable because in that case, the inmate had been, so he had filed some grievances. Before that, the prison investigated whether he was a gang member. And on two occasions, it concluded that with the evidence it had, he was not a gang member. Then he had filed some grievances, and the prison then investigated again and used the same evidence to conclude that he was a gang member. And this Court said that in that kind of situation where, sure, the prison is required to investigate whether inmates are members of a gang or not. But here, when they had twice concluded that he was not a gang member and then the third time used the same evidence to say that he was, that puts in doubt whether there's actually a legitimate correctional interest to what they did. Here, there's no such case. The interest was tailored to Mr. Cruz because he had violated prison rules and had been put on this property restriction. The first search was necessary to check if he was complying with those rules. It revealed that he wasn't. There was a second search a couple months later that showed that he still was not complying. It still again revealed prohibited property items. And a third search a couple weeks after that showed that he was still noncompliant. So for those reasons, there was no dispute of material fact that the searches were proper. Um, unless the Court has any questions? I don't think so, Counsel. I ask the Court to affirm. Thank you. So, how are you all going to handle the balance of the rebuttal? Who's going to handle it? I will be giving a rebuttal. Very well. I have two very brief points on rebuttal. First, Cruz did provide the prison with notice of his Eighth Amendment claim related to May 5th. Through a combination of the grievance and the second level interview, which was a part of the grievance process, Cruz did give notice of the wrong for the redress that was sought, which is the standard from Rays and Griffin. He alleged in the interview that a white inmate slammed me into the ground and broke my ribs, which is in the ER at 77, and alleged that they were setting inmates up to fight with him. This seems like clear notice of that claim, and the prison officials are not able to simply not address that claim or give it back to Cruz as procedurally defective. Again, there is no legitimate penological purpose behind setting up Cruz to fight another inmate. Thus, whether or not having both a legitimate motive and an illegitimate motive would insulate the officers, that question does not need to be reached because Cruz alleges it was used to set up a fight. Thank you. Thank you. Thanks to all of you, especially to our That was amazing to squeeze all that into that amount of time. Yeah, you did a great job. You'll have great careers ahead of you. So thank you, Professor, for supervising them. The case just argued is submitted.
judges: Hawkins, M. Smith, Jr., Lynn